No. 3212

Second Circuit

---

SECURITIES SALES CO. v. NALLEY

---

(June 28, 1928. Opinion and Decree.)

---

(*Syllabus by the Editor*)

1. Louisiana   Digest—Sales—Par.   64,   87, 138, 141.

Where the evidence clearly shows that when the purchaser of a motor truck returned it to the owner of the chattel mortgage notes he did not ask the return of the notes and the understanding was that the truck was to be sold and the amount received credited on the balance due, there must be judgment for plaintiff on the note less the amount received for truck.

Appeal from the Ninth Judicial District Court, Parish of Rapides. Hon. R. C. Culpepper, Judge.

Action by Securities Sales Company of Louisiana, Inc., against W. E. Nalley.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

W. C. Roberts; B. T. Dawkins, of Alexandria, attorneys for plaintiff, appellant.

Lamar Polk, of Alexandria, attorney for defendant, appellee.

ODOM, J. Plaintiff brought this suit to recover $158.80, alleged to be the balance due on a promissory note representing part of the purchase price of a truck and trailer sold by plaintiff to defendant.

There was judgment in the District Court rejecting plaintiff's demands, and it has appealed.

The amount of the note is $584.50, but defendant made payments thereon until there was a balance due of $233.80. Being unable or unwilling to make further payments he voluntarily surrendered the truck and trailer to plaintiff.

Defendant's contention is that he surrendered the property with the understanding that it was accepted by plaintiff in full satisfaction of the balance due on his note, whereas plaintiff contends that the property was surrendered to it to be sold to the best advantage and that the proceeds of the sale should be credited on the note.

Plaintiff sold the tractor or truck for $75.00, credited that amount on the note,

which left a balance of $158.80, the amount claimed in this suit.

At the time defendant returned and surrendered the property to plaintiff he signed an instrument which reads as follows:

"12/30/26

"I hereby release to Securities Sales Company of Louisiana, Incorporated, the car owned by me on which they hold chattel mortgage, the same to be sold by them and the proceeds credited to my account.
"Witnesses:        (Signed) W. E. Nalley.
(Signed) "Henry Lanier,
(Signed) "F. J. Miller."

There are no ambiguities in the above instrument. It contains nothing to indicate that plaintiff was to receive the property in full satisfaction of the debt, but, on the contrary, stipulates that plaintiff is to sell the car and credit the proceeds on the note.

Defendant testified that he read the instrument before signing it. But in his answer he alleged that plaintiff's representative fraudulently represented to him that the instrument presented to him for his signature was a complete release from the debt.

However, as a witness in his own behalf, defendant testified that plaintiff's representative made no fraudulent misrepresentations to him, but says that he was under the "impression" that he was to be released.

He testified that when he delivered the car to plaintiff he told Miller, plaintiff's representative, that he brought—

"the truck to turn over to the Sales Security Company for the balance due on it," and that Miller said—

"You will have to sign a release so we will have to sell the car or truck."

Defendant admitted that Miller did not agree that he should be released from the debt, and one of defendant's witnesses, who was present, stated that Miller made no agreement as to release.

But defendant said—

"That certainly was the impression when I signed the release that I was settling with the Security Sales Company the balance due."

Defendant was asked—

"Did Mr. Miller tell you that he would sell it for sufficient to pay the note?"

And he answered—

"Mr. Miller said he would say this for the truck: it came in as good condition as any one they had ever taken back."

Asked how he got the impression that he was to be released, and if Miller said anything to him to that effect, defendant replied—

"No sir; wasn't anything said between us. He didn't tell me he would sell this truck as a part of this balance. He wanted me to sign a release so they could sell the truck and get their money."

At page 15 of the testimony, defendant was asked—

"Did Mr. Miller tell you if you signed the release you would be released from all liability?"

And he replied—

"He never mentioned that. The conversation was that I told him I would sign the release."

Mr. Lanier, who was present and witnessed the document, was asked if Miller told the defendant he would be released from further payments if he signed the document, and he said—

"No, sir; never heard him say that."

Miller, for plaintiff, testified that defendant surrendered the truck to be sold

by plaintiff to the best advantage and the proceeds credited on the note, and that it was not understood or contemplated that plaintiff should be released.

Plaintiff did not surrender the note to defendant when this transaction' took place. Defendant does not explain why this was not done. The fact that the note was not surrendered is a strong circumstance corroborating plaintiff's case.

Considering plaintiff's own testimony and that of his witness, Lanier, the testimony of Miller, for plaintiff, the instrument which defendant signed, and the fact that the note sued on was not cancelled and delivered to defendant, it is manifest that defendant failed in his defense that he paid the debt by surrendering the property.

Defendant, in the alternative, urged that the property was well worth the amount of the debt and that plaintiff could, with diligence, have obtained more for it.

That defense also fails. Plaintiff's witnesses testified that they made numerous efforts, over a period of several months, to sell the property, and that $75.00 was the best offer it could get. It was to its interest to get all it could for the property, and it seems reasonable that if it could have gotten a better offer it would have taken it.

We think the judgment in this case is manifestly erroneous.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be reversed and avoided, and it is now ordered, adjudged and decreed that there be judgment in favor of the plaintiff and against the defendant for the sum of one hundred fifty-eight and 80-100 ($158.80) dollars, together with eight per cent. per annum interest thereon from March 26, 1927, until paid, together with 15 per cent thereon as attorney's fees (as provided in the note) and all costs.